IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| ROWDY LEAL, *et al.*, | § | |
| | § | |
| PLAINTIFFS, | § | |
| vs. | § | CIVIL ACTION CAUSE NUMBER |
| | § | |
| PARAMOUNT RESTAURANTS GROUP, | § | 2:12-CV-038-J |
| INC., *et al.*, | § | |
| DEFENDANTS. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER DENYING CLASS CERTIFICATION

Before the Court is Plaintiffs' motion (docket entry number 37) to certify a Rule 23 class and a subclass in this case, Defendants' response, and Plaintiffs' reply thereto. For the following reasons, Plaintiffs' motion for class certification is denied.

*Factual Background and Summary of Plaintiffs' Claims*

Plaintiffs allege that Defendants Cory Strickland and Gary Strickland purchased and managed a chain of restaurant collectively known as the Paramount Restaurant Group (PRG). Plaintiffs allege that pursuant to a series of fraudulent representations made by Cory Strickland beginning in 2000 and continuing thereafter, all of the Plaintiffs, and others, were induced to roll over their retirement savings accounts, which were held in employee profit sharing, retirement and pension plans, into a series of Paramount Restaurant Group employee stock ownership plans. Plaintiffs allege that after the rollovers, through a complex series of insider deals, bank loans, sales of PRG plan assets, conversions of funds, breaches of fiduciary duties, and prohibited transactions committed by the Stricklands, all of the stock in the PRG plan became either worth less, or worthless.

This lawsuit arises out of that series of transactions involving the Paramount Restaurant Group, Inc. (PRG) Employee Stock Ownership Plan #002 (the PRG ESOP), and other entities, occurring on or about May 14, 2000, during 2003 and 2004, in February of 2008, during 2011, as well as allegedly

currently continuing violations of ERISA. Beginning with the May, 2000 transaction, assets in the employee retirement benefits accounts of PRG employees who were participants in the LaRoche & LaRoche, Inc. employee profit sharing retirement plan (the LaRoche plan), and other existing employee retirement plans consisting of diverse investments,[1] were transferred or "rolled over" into the PRG ESOP.

Plaintiffs allege that they are all participants in the PRG ESOP. The PRG ESOP is alleged to be the majority shareholder of Paramount Restaurants Group, Inc., holding 60% of the issued and outstanding PRG stock.[2] The PRG shares are the only assets of the ESOP, Plaintiffs believe. The individually-named Plaintiffs allege that they are the beneficial owners of approximately .289 % of the shares of PRG stock that are allocated to ESOP participants. Defendant Cory Strickland allegedly owns 35% and Defendant Gary Strickland owns 5% of the remaining outstanding PRG shares. Plaintiffs allege that since at least 2008 Defendant Cory Strickland has been and is the sole trustee and a fiduciary of the ESOP.

Plaintiffs seek relief under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA). Plaintiffs allege the Defendants have abdicated their duties and responsibilities as trustees of the ESOP, have failed to protect and preserve the assets of the ESOP, sold the intellectual property, including trade marks and trade names, of the ESOP, and failed to discharge their duties as plan trustees solely in the interest of the ESOP and the ESOP participants. Plaintiffs allege that the Defendants have breached the fiduciary duties they owe the ESOP and ESOP participants. Plaintiffs allege that the Strickland Defendants have engaged in a pattern of self-dealing, gross misconduct,

---

[1] For example, Plaintiff Rowdy Leal rolled over his account balance from his pre-existing "Steak & Ale" 401(k) retirement plan into the PRG ESOP. Plaintiffs state that they have no knowledge of the status of those LaRoche plan participants' accounts who did not "roll over" into the PRG ESOP, but believe the Scratch Cookin, Inc., profit sharing plan, f/k/a the LaRoche plan, was terminated in 2002. Plaintiffs say they have scant and inaccurate information as to the status of accounts that were rolled over into the PRG ESOP.

[2] Plaintiffs state that their 60% of the 4.5 million issued PRG shares equals 2,700,000 shares. Plaintiffs state that Gary and Cory Strickland together own 1,800,000 PRG shares (the remaining 40%), with an additional 1,919,000 PRG shares held by the ESOP being unallocated.

2

diversion of and conversion of ESOP and corporate funds, thereby essentially diverted and/or converted the Plaintiffs retirement funds to their personal gain. Plaintiffs complain that Cory and Gary Strickland's wrongful actions caused the PRG stock held in their ESOP to become diminished in value (the ESOP claims). Plaintiffs also complain that, without notice to ESOP participants, Cory Strickland wrongfully caused the PRG ESOP to borrow money from a bank so that the ESOP could purchase back PRG stocks from Cory and Gary Strickland (the buyback claim).

*Class Certification*

Plaintiffs ask the Court to approve a class and subclass of ESOP members and former members, not including Gary and Cory Strickland. Plaintiffs' proposed class definitions are:

"All persons other than individual defendants who owned stock of PRG on May 14, 2000 and therefor, stock of PRG.

The Class: All persons who were participants or beneficiaries of the Strickland ESOP at any time from May 14, 2000, to the present, who authorized the roll-over of their retirement fund into the PRG ESOP; and

The Subclass: All persons who were participants or beneficiaries of the LaRoche profit sharing, 401(k) or any other retirement plan at the time of the 2000 Transaction and whose profit sharing or 401(k) accounts were transferred or rolled over to the Strickland ESOP on or about May 14, 2000, as part of the 2000 Transaction, who may have been bought out later for an inadequate value as a result of the defendants fraud and diversion or conversion of ESOP funds."

Plaintiffs state that they believe there are approximately 211 members of the class as described. Plaintiffs state that each class member holds his or her number of shares in the PRG ESOP proportional to the

amount of their LaRoche plan funds, or other retirement plan accounts, at the time of the May 14, 2000, rollover of $781,027 from the LaRoche plan into the PRG ESOP, which was done on a dollar-for-dollar basis. Some PRG ESOP plan participants have allegedly sold their plan shares at a loss, and at least one plan participant effectively "cashed out" $200,000.00 of his ESOP shares at full book value through a restaurant purchase agreement that is not the subject of this lawsuit./[3]

Defendants agree that 18 of the 20 named Plaintiffs are some of the participants in the PRG ESOP,/[4] however, Defendants state that they are unable to verify that named plaintiffs Alicia Longstreath and Tim M. Heider were ever plan participants, especially in the Class and Subclass as defined. Defendants argue that Longstreath and Heider do not appear to be members of either the putative Class or Subclass, and therefore have no standing to seek class certification.

Defendants further state in response that because the class is defined as participants or beneficiaries "at any time from May 14, 2000, to the present," then restricted to those "who authorized the roll-over of their retirement fund into the PRG ESOP," the exclusive list of persons who fit the Plaintiffs' class definition numbers 36 persons. That number includes Cory Strickland (a $49,837.29 rollover) and Gary Strickland (a $146,975.00 rollover), and seven persons who are no longer plan participants. Excluded from the class and subclass as defined would be Randall Decker (a $200,000.00 rollover), leaving a total potential primary class of 33 persons, at least 18 of whom Defendants concede are already named plaintiffs in this suit. By Defendants' calculation, that would leave at most 15 possible additional class members who are not already named plaintiffs herein, and approximately $384,214, or less, in roll-over funds allegedly lost.

---

[3] The 2003 Calico County restaurant purchase agreement between non-party Randall Decker and Defendant Cory Strickland.

[4] The twenty named Plaintiffs are Rowdy Leal, Sigifredo Cisneros, Timothy J. Heider, Ronald Joseph, Luis Lopez, Alberto Lopez, Pedro Molina, Cary P. Yancy, Eduardo Zubia, Ruben Chavaria, Lazaro Cisneros, Eduardo Rodriguez, Arturo Gonzalez, Michael Garcia, Alicia Longstreth, John Criado, "D.J." Doyle L. Ozment, Tim M. Heider, Barry Moore and Angel Martinez.

Plaintiffs have not responded to the Defendants' calculations of the possible numbers of primary class members being, at most, 33, (or possibly 31, as explained below).

Plaintiffs make a different calculation of putative class members. Plaintiffs claim that the class has 288 members as of December 31, 2011. However, the class as they define it is restricted to those persons who rolled over their benefits from the LaRoche & LaRoche, Inc. Profit Sharing Plan to the PRG ESOP #002 on or about May 14, 2000. Plaintiffs seek recovery, on behalf of the putative class of all ESOP participants, as defined, a sum of $780,975. That is virtually the amount of the cash ($781,027) rolled over into the ESOP from the retirement plan of LaRoche & LaRoche, Inc. This demonstrates that the class is not large, since those dollar amounts are based on a total of 34 members (41 participants who rolled over account balances, less the 7 subclass members who have been paid by the ESOP whose calculation of damages claims are not typical of the whole class), less two specially excepted members (Defendants Gary and Cory Strickland), less non-party Randall Decker, who "cashed out" at full value, leaving a total of 31 persons, at least 18 (20, according to the Plaintiffs) of whom are already in this suit.

The class as defined is not too numerous for joinder as individually-named plaintiffs. To obtain certification of a class action for money damages under Rule 23(b), a plaintiff must satisfy Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish under 23(b) that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, ___ U.S. ___, 133 S.Ct. 1184 (2013). A class action may be maintained under the federal class-action rule only if the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement of Rule 23(a)(1) is designed to prevent members of a small class from being unnecessarily deprived of their rights without a day in court. *Matthies v. Seymour Mfg. Co.*,

270 F.2d 365 (2nd Cir. 1959). When subclasses are proposed, each subclass must independently meet the numerosity requirement. The Fifth Circuit has repeatedly "stress[ed] that it is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)(*citing O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir. 2003))./[5]

Whatever the lower limit of the numerosity requirement may be, the potential class number is too low in this case to certify a class. In determining whether a class is so numerous that joinder of all members is impracticable, the basic question is practicability of joinder, not a number of interested persons *per se;* practicability of joinder depends on the size of class, the ease of identifying its members and determining their addresses, the facility of making service, and their geographic dispersion. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980), *certiorari denied,* 101 S.Ct. 923, 449 U.S. 1113, 66 L.Ed.2d 842 (1981). Plaintiffs have not shown that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. They have not shown that the additional persons sought to be joined as class members is so numerous a number that joinder of all potential PRG ESOP members is impracticable.

Plaintiffs have not shown that they will suffer a strong litigational hardship or inconvenience if joinder is not required. Defendants have attached rollover records identifying the class members. There is no argument offered that they are geographically dispersed, that contact with them can not be made, or that their current addresses can not be determined. Proceeding in this case as a class action unnecessarily

---

[5] The party seeking class certification bears the burden of meeting all the Rule 23 requirements. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001). The requirements fall into two general groups: the four 23(a) requirements (numerosity, commonality, typicality, and representativeness), which must be met by all proposed class actions; and the three groups of Rule 23(b) requirements, one of which must be met by the proposed class. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 355 (5th Cir. 2007); *Stirman v. Exxon Corp.*, 280 F.3d 554, 558–59 (5th Cir. 2002).

risks the additional class members, of a small class, from being unnecessarily deprived of their individual rights without their own day in court, given their pertinent right of "the class members' interests in individually controlling the prosecution or defense of separate actions." Rule 23(b)(3)(A).

In addition, the class definition is inadequate. On its face it includes seven PRG ESOP participants who cashed out, allegedly for inadequate value, who are not proper class members for reasons explained below.

*Subclass Issues*

The subclass also does not meet the numerosity requirement. Defendants state that there are 7 subclass members who might possibly meet the definition of having "been bought out later for an inadequate value." Plaintiffs do not dispute that number.

It appears in this record that some plan participants accepted a payout of their PRG ESOP shares, some did not accept a payout, and some are not yet eligible for a payout under the current terms of the plan. As the subclass is defined, each plan participant who took a payout would have to be examined to see if they claim "inadequate value as a result of the defendants fraud." Because the underlying value is the PRG stock held as the sole asset of the plan, each payout is unique as to time up until the point in time the stock became worthless, if ever, which means that the calculation of each of these seven person's damages as paid-out plan participants must be determined not as for the class as a whole, but as to each member at the time of the payout. There is no "typical" subclass damage claim; the damages claimed for each person depends upon individual determinations of the difference between what allegedly should have been the value of their shares at the time each individual withdrew from the employee benefit plan, how much they initially rolled over into the ESOP, less the amounts each actually received when they cashed out, and how much, if any, money remains in the ESOP fund at the time of trial.

In addition to the lack of typicality and numerosity, the subclass definition is itself a problem. Plaintiffs have sued two corporations, the ESOP, and several named defendants. The definition of the

subclass does not specify which sued Defendants are alleged to have committed "fraud and diversion or conversion of ESOP funds." In addition, the subclass as defined – persons "who may have been bought out later for an inadequate value as a result of the defendants fraud and diversion or conversion of ESOP funds"– requires each subclass member to conclude, with little or no guidance, which of the seven potential subclass members are included. Such a conclusory subclass definition does not give adequate notice to potential class members. It assumes they have been defrauded by diversion or conversion of ESOP assets, an alleged fact that may possibly be true for some but not all members.

*Class Representatives*

It appears undisputed that at some time, possibly including 2008, named plaintiff Rowdy Leal was an appointed trustee of the ESOP. As a trustee during that time, he is statutorily charged with fiduciary duties to the ESOP and its beneficiaries. 29 U.S.C.A. § 1109(a) (fiduciary duty standards imposed by ERISA are enforceable in civil damage actions only against parties who are fiduciaries under ERISA statute). Defendants argue that he is therefore "fundamentally disqualified from representing either the putative Class or Subclass due to a conflict of interest." Regardless of whether Rowdy Leal is "fundamentally disqualified" or not, other potential or named plaintiffs may possibly assert cross-claims against Leal for ERISA violations related to a 2008 transaction. *See* 29 U.S.C.A. § 1002(21)(A) (a person is a "fiduciary" for purposes of ERISA to extent that he exercises discretion over management of plan assets or exercises discretionary control over administration of a plan).

In the 2008 transaction, one or more of the Defendants allegedly negotiated for at least $235,000.00 in additional funds in connection with the buy-out by the Palisades restaurant group of one half of the Stricklands' interest in the restaurants. That $235,000.00 was allegedly to have been contributed to the ESOP on behalf of the plan beneficiaries, but was not. It is not clear in this record if the $235,000 was in part for PRG stock out of the ESOP, or not.

In any event, it has not been shown in this record that Leal's claims are typical of the rest of the Plaintiffs, and there is the potential that he might be required to devote considerable time to rebut the Defendants' counterclaims. *See Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 314 (5th Cir. 2007)("the key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims."); *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)(the Rule 23 adequacy inquiry also uncovers "'conflicts of interest between the named plaintiffs and the class they seek to represent.'")(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 2236, 138 L.Ed.2d 689 (1997)). A conflict may therefore exist among the class members, raising further questions about the adequacy of Plaintiff Leal's ability to represent the class and subclass. *See Langbecker*, 476 F.3d at 314-15.

Given the denial of class certification, the Court need not resolve the issue of whether Plantiffs Longstreath and Heider are or are not members of the putative Class, and therefore may be adequate class representative. Resolution of the issues related to these two named Plaintiffs can either be resolved upon summary judgment motions or at trial.

## *Conclusions*

For all of these reasons, Plaintiffs' motion for certification of a class and a sub class is denied.

If Plaintiffs seek leave to join additional named Plaintiffs, they must promptly do so by **April 29, 2013.**

It is SO ORDERED.

Signed this the ____4th____ day of April, 2013.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE